### BY THE

## Hon. ROBERT H. BUCKNER,

### CHANCELLOR OF THE STATE.

## FOR THE DECEMBER TERM, 1843, AND PREVIOUSLY,

### AT JACKSON, MISS.

---

## MARTIN PLEASANTS & Co. *v.* ANN M. GLASSCOCK, *et al.*

A creditor of the estate of a deceased person, cannot come into equity to subject to the satisfaction of his debt, property of the decedent in the hands of a third person, who has intermedled with and possessed himself thereof.

In such case the creditor has a plain, adequate, and unembarrassed remedy at law.

A court of equity will entertain a bill for discovery, and an account of assets, against an executor or administrator, upon a pure legal claim.

Where a person is sought to be charged in equity as executor *de son tort*, he should be sued as a regular executor.

A bill which sets up one sufficient ground for equitable relief, and then states another upon which no relief can be had, is not thereby rendered multifarious. .

In such case the defendant should demur to one part, and answer to the other; or answer generally, and object at the hearing to that part which is without claim to equitable cognizance.

To render a bill multifarious, the matters thereof must not only be separate, and distinct, but each must be of a character entitling the complainant to separate equitable relief.

If a bill be multifarious, it cannot be demurred to on that account, unless the prayer be also multifarious.

It is not necessary to make the personal representative of a deceased party a defendant to a bill filed by creditors seeking to subject a fund specifically pledged by the decedent for the payment of their debt; no claim being made upon the general assets of the estate.

VOL. I.              1

A person for whose benefit a trust is created without his knowledge, may afterwards affirm it, and enforce its execution.

Where a complainant prays for particular relief *and* for other and further relief, he can have no relief, inconsistent with the specific relief asked, even though there may be just foundation for it in the bill; in such case, the prayer for *other relief* must be *in the disjunctive.*

THE complainants alleged in their bill that, in the year 1834, one Caleb B. Hudson, then of the county of Jackson, in the State of Alabama, died, having first made his will, which was duly probated in the county court of that county. That at the time of his death he was seised and possessed of large real and personal property. That his widow Ann M. and three children by her, and three by a former wife, survived him : that by his will, after some specific bequests to the children of his first wife, he left to his widow and her three children the rest and residue of the estate, both real and personal, the widow to have the use and enjoyment of one fourth part for her lifetime, and the children the remainder in fee simple. The bill exhibited a copy of the will.

They stated that the widow qualified as executrix, and exhibited a certificate of the county court appointing her. That, besides the house and lot named in the will, the testator owned a valuable tract of land, forty-four slaves, and other personal property ; all of which property the widow, by virtue of her appointment as executrix, received into possession and cultivated the land with the negroes, and used the other personal property for the increase and improvement of the estate, until 1836, when her marriage with William H. Glasscock, of the county of Madison and State of Alabama took place, who by the laws of that State became executor in right of his wife, and so continued until his death in the fall of the year 1840.

That during the existence of the last-named marriage, William H. Glasscock, being reputed rich, and in possession of a large amount of property, contracted many debts : among the rest, several to complainants ; one of $1629·54, by note dated January 1, 1840, payable twelve months after date to James R. Maltbie or order, and by Maltbie transferred to complainant ; another of $1756, of same date, due two years after date ; another of $866·62, payable twelve months after date ; another in the like sum of

$866·62, by bill of exchange; another by open account of $204·27; the evidences of which were made exhibits to the bill.

That on the 24th day of April, 1840, William H. Glasscock executed a deed of trust, upon his property, to secure certain debts; *first,* to secure his overseer his wages; *second,* to provide for the expenses of an expected lawsuit; *third,* to pay any expenses of carrying the deed of trust into execution; *fourth,* to pay the indebtedness of William H. Glasscock to the estate of Caleb B. Hudson, supposed to be about eight or ten thousand dollars; *fifth,* to pay a number of persons debts due to them, upon which surety had been given, the names of the creditors being given, and also those of the sureties, but the particular amount of each respective indebtedness was not set out in the bill; and, lastly, to secure the payment of her other debts; by this deed, Mr. Glasscock conveyed all his estate, real, personal, and mixed, to one Benjamin T. Moore, who was to sell the same, in the mode prescribed in the deed of trust, which was exhibited with the bill, and pay the proceeds in discharge of the debts as recited and enumerated in the deed.

The bill further alleged that William H. Glasscock died in the fall of 1840, leaving an only son, by a former marriage, of the same name. Soon after his death, the widow moved to Mississippi and took possession of the property in this State, owned by her husband in his lifetime, and conveyed by the deed of trust, being land and negroes, in Holmes county; that she still has the same in her possession.

That W. H. Glasscock made no will, and "no administration has been taken out upon his estate."

That Moore, the trustee, being urged by the creditors, in the spring of 1841, advertised the property in Mississippi for sale under the deed of trust; that Mrs. Glasscock filed a bill in the Superior Court of Chancery of this State, and enjoined the sale, on the ground that the debt to the overseer had been paid off, the other preference debts not contracted, and that the debt due the estate of her first husband was $13,142·91, which was the first then, of the preferred debts, and that the property she was then in possession of, and which she particularly describes, was not more than suffi-

cient to pay the debt due her first husband's estate ; that the trustee living in Alabama, and having no interest in the matter, " did carelessly, negligently, and in fraud of the rights of the complainant and the other creditors of said Glasscock, and combining and confederating with the said Ann M., consent and agree to compromise, and did actually compromise with her ; " by *permitting her to keep the property* in her possession in payment of the debt due to her first husband ; upon which compromise Mrs. Glasscock dismissed her bill.

' What had become of the other property conveyed by the deed of trust, which lay in Alabama, the complainants did not know, but presumed it had been sold to pay the preference debts, if any such existed after Mrs. Glasscock's claim.

The bill charged that the property in Mrs. Glasscock's possession, was in equity " applicable to the payment of complainants' debts, and should be decreed to be a fund in the hands of Mrs. Glasscock for that purpose," after paying the debt due to her ; nine thousand dollars of which, the bill charged, " was founded in injustice and fraud, and without pretence of foundation in right."

That on the 26th of January, 1839, the accounts in the Orphans' Court of Alabama, filed by Mr. and Mrs. Glasscock, showed an indebtedness *in their favor, against* the estate of Caleb B. Hudson, of $2,148·79.

That after the death of Mr. Glasscock, in November, 1840, Mrs. Glasscock filed two accounts in the same Orphans' Court, one embracing the sums with which she was separately chargeable, and the credits to which she was separately entitled ; and the other, the account of Mr. Glasscock, as executor, with similar debts and credits.

By the first of these accounts, Mrs. Glasscock is chargeable with $16,524·81, and to be credited with $21,030·05, leaving a balance in her favor, of $4,505·24, " and upon examination, it will be seen, not without surprise, that she has appropriated to herself individually, every credit to which she and her husband were jointly entitled by the account of the 26th of January, 1839, notwithstanding he, in virtue of the marriage, had been at that time in charge of the estate more than two years,"

By this account against Mr. Glasscock, he was charged with $17,719·50, and credited with $4,576·59, leaving a balance against him of $13,142·91, which she had settled with the trustee. These accounts are exhibited with the bill.

The bill stated further, that a number of the items and vouchers of Mrs. Glasscock's account were receipts for payments made by W. H. Glasscock in person, and that they amount to $7900, and should be credited to him; another, for cotton, improperly charged, of $1076, when added to his credits, swells the sum to $13,422, which, deducted from his debts, leaves a balance against him of only $4287, and this, admitting the other items to be correct, which the bill denied;' that upon this *ex parte* statement, the probate court in Alabama made a final settlement, by which they aver they are not bound, as it was accomplished by fraud, without notice to them.

The bill further alleged that, by an agreement between Mr. and Mrs. Glasscock, the planting interest of Caleb B. Hudson, in Alabama, was sold and transferred into Mississippi, by the purchase of a plantation in Holmes county in this State, for the estate of said Hudson, with the proceeds of the sale of the land in Alabama, and other payments made by himself, out of the proceeds of his own estate, for which he had never been credited, in his account with the estate of Caleb B. Hudson; that said purchase in Holmes county was made for and on account of the estate of Hudson, and not his own account, and the loss upon that purchase, if any, should fall upon the estate of Hudson.

That Mrs. Glasscock delivered the possession of six of the negroes embraced in the deed of trust to one of her husband's relatives, who carried them off to Texas.

That they are entitled to an account of what Wm. H. Glasscock reduced to possession in his lifetime of his wife's interest in the estate of her first husband, being the life interest in one fourth part thereof.

That the fourth part of the cotton crops, and the proceeds of the sale of the land, to the year 1839, were equal to $7485, to which they claimed to be equitably entitled.

The bill then made the various creditors recited in the deed of

trust, the trustee, the widow and son of Wm. H. Glasscock, defendants, propounded a series of interrogatories, and concluded with the following prayer : " And on final hearing, your orators pray, that upon each and all of the grounds, hereinbefore stated and assumed, the said Ann M. be caused to pay to your orators the amount of their said debts, with interest, and for such other relief as may be consistent with the principles of equity, and suited to the nature of their case."

To this bill Mrs. Glasscock demurred.

First. Because there was no equity in the bill, upon which, as between Mrs. Glasscock and the complainants, relief could be given.

Second. Because the personal representative of Wm. H. Glasscock was not before the Court.

Third. Because the bill sought to revise the judgment of the County Court of Jackson County, Alabama.

Fourth. The bill is filed to compel the defendant to pay a debt owed by W. H. Glasscock, and does not exhibit any equitable reason for it.

Fifth. The complainants do not adopt or disclaim the provisions of the deed of trust.

Sixth. The Court has no jurisdiction.

Seventh. The bill is multifarious.

*Wm. Thompson*, for the Demurrer.

*Mayes & Clifton*, for Complainants.

By the CHANCELLOR. Wm. H. Glasscock, in his lifetime, conveyed all his property, both real, personal, and mixed, in trust, to secure and pay different specified creditors, in a given order of preference, and then to pay his creditors generally, without naming them. Among the preferred creditors was the estate of C. B. Hudson, deeased. Glasscock had intermarried with Hudson's widow, who was the executrix of the estate, and his indebtedness arose out of his relation of executor. It is alleged, that by a fraudulent agreement between the trustee in the deed of trust, and Mrs. Glasscock, the whole trust property, situate in Missisippi, was relinquished to her, in satisfaction of the debt alleged to be due said estate ; and it is charged that nothing was, in truth and in fact, due said estate at the date of

said relinquishment, and that the property was of much greater value than the debt claimed to be due.  It is also alleged that there is no administration upon the estate of Glasscock, and that Mrs. Glasscock has all his property in her hands.  Upon these leading facts, the complainants, claiming as creditors under the deed of trust made by Glasscock, pray specifically for a decree, for the amount of their debt against Mrs. Glasscock, and generally, for *other* and *further* relief.  The case was submitted on the demurrer of Mrs. Glasscock, in which is assigned different causes of demurrer, extending mostly to the merits of the bill.  Among other grounds taken, is, that the bill is multifarious as to the matters therein stated. Whether it was intended to charge the defendant directly with the payment of the complainants' claim upon one or both, the state of different facts set out in the bill, is not easily determined from the bill itself.  She is first charged with receiving a portion of the trust fund set apart by the debtor of the complainants, for the satisfaction of their claim.  She is then charged with having received, and being in the possession of, other property of said debtor.  And upon this ground, I infer, it is sought to charge her with the complainants' debt.  In relation to this latter ground, I take it to be clear, that there is nothing in the state of facts thus set forth which authorizes the interposition of a court of equity.  A mere general creditor, holding a purely legal claim, against the estate of a deceased person, cannot come here for the satisfaction of that claim against one who has intermeddled with, and possessed himself of, that estate. In such case, the creditor has a plain, adequate, and unembarrassed remedy at law.  It is true that a creditor may, upon a mere legal claim, come here for a discovery and account of assets against an executor or administrator.  But this suit is not against the defendant in either of those characters.  If the object of the bill was to charge her as executrix *de son tort*, she should, according to the practice upon that subject, have been sued as a regular executrix. It is clear, therefore, that the only ground stated in the bill, which gives jurisdiction to the Court, is that which charges that Mrs. Glasscock has, by a fraudulent arrangement with the trustee, obtained a portion of the trust fund, assigned, in part, for the satisfaction of the complainants' debt.  Here then is one state of facts in the

bill upon which relief may be had ; and it has been held that a bill which sets up one sufficient ground for equitable relief, and then states another, upon which no relief can be had, is not thereby rendered multifarious.   *Varick* v. *Smith*, 5 Paige's Rep. 137.

In such case it seems the defendant should demur to one part and answer to the other, or answer generally, and object at the hearing to that part which · is without claim to equitable cognizance.   It seems, according to this decision, that, to render a bill multifarious, the matters thereof must not only be separate and distinct, but each must be of a character entitling the complainant to separate equitable relief.   But even if the matters of the bill were clearly multifarious, yet the rule seems to be, that the bill cannot be demurred to on that account, unless the prayer thereof be also multifarious. *Dick* v. *Dick*, 1, Hogan, 290.   Here the prayer of the bill is for single relief.   But it is said that the bill is defective, because there is no personal representative of Glasscock, as a party to the bill. This, I apprehend, is not necessary.   Here the complainants make no claim upon the general assets of the estate, but seek to subject a fund, specifically pledged by the intestate, in his lifetime, for the payment of their debt.   This I think they have a right to do, without making the personal representative a party, even if there were any ; but here it is distinctly alleged, that there is no such representative in existence.   It is next said, in support of the demurrer, that the complainants do not allege that they accepted of the provisions of the deed of trust.   It is well settled that a person for whose benefit a trust is created, without his knowledge, may afterwards affirm it and enforce its execution.   *Cumberland* v. *Codrington*, 3 John. Ch. Rep. 261.   The bringing the suit in this case, I consider, amounts to such an affirmance, and to an election, to claim under the deed of trust.   I have much more difficulty with reference to the prayer of the bill.   It is, that Mrs. Glasscock may be decreed to pay the amount of the complainants' claim, *and* for other and further relief.   I think I have already shown that no such direct decree can be made in the case ; — the complainants being entitled to relief, only through the medium of the trust fund. But to enforce the deed of trust would be entirely inconsistent with the prayer of the bill.   It has been decided, and I think rightly,

that where the complainant prays for particular relief, and for other and further relief, he can have no relief inconsistent with the specific relief asked, even though there may be just foundation for it in the bill. In such case, it seems the prayer for other relief must be in the disjunctive. *Colton* v. *Ross*, 2 Paige, Rep. 296 ; 1 Hoff. Ch. Pr. 51 (note). The prayer of the bill in this case is defective in that particular, and to that extent the demurrer must be sustained. But I think the complainants should have leave to amend upon payment of costs.